**MURRAY et al. v. HOEY, Collector of Internal Revenue for Second District of New York.**
**Civil No. 1—44.**

District Court, S. D. New York.

May 3, 1940.

George Flint Warren, Jr., of New York City (Peter F. McAllister and Alfred P. Hamel, both of New York City, of counsel), for plaintiffs.

John T. Cahill, U. S. Atty., of New York City (Myles J. Lane, Asst. U. S. Atty., of New York City, of counsel), for defendant.

---

BYERS, District Judge.

The plaintiffs, as executors of Ella V. von E. Wendel, seek judgment to recover $17,674.50, with interest from December 1, 1936, representing the aggregate amount of United States documentary stamps affixed to six deeds conveying the residuary real estate formerly the property of the decedent (and passing under the Twenty-third paragraph of her will to fourteen charitable, benevolent, educational or religious corporations) to Wendel Foundation, a charitable membership corporation duly created by Chapter 947 of the Laws of 1935 of the State of New York.

The right to claim refund was appropriately reserved.

The sole question for determination is whether such stamps were required so to be affixed under the appropriate provisions of Title VIII, § 800 et seq., Schedule A 8, of the Revenue Act of 1926, as amended, namely: ."Deed, instrument, or writing * * * whereby any lands, tenements, or other realty sold shall be granted, assigned, transferred, or otherwise conveyed to, or vested in, the purchaser or purchasers, or any other person or persons, by his, her, or their direction, when the consideration or value of the interest or property conveyed * * * exceeds $100 * * *." 26 U.S. C.A.Int.Rev.Code, § 3482.

At the trial no contention was offered that there was any deficiency in stamps, from which it must be assumed that the appraisal of the value of the said residuary real property was deemed to be adequate and sufficient.

The essential evidence has been stipulated and may be thus summarized:

The residuary portion of the decedent's will, as far as presently material, reads as follows:

"Twenty-third: All the rest, residue and remainder of my estate, of whatsoever the same may consist and wheresoever situate, including any and all legacies and devises which may lapse or for any reason fail to take effect, I give, devise and bequeath to my sister Rebecca A. D. Wendel Swope, to have and to hold the same for and during the term of her natural life; and upon the death of my said sister Rebecca A. D. Wendel Swope, or in case of her death before me then upon my death, I direct my Executors to divide all the rest, residue and remainder of my estate into Two hundred equal shares or parts, and I give and bequeath the same as follows:"

Then follows the allocation of the two hundred shares to and among fourteen corporate beneficiaries.

The sister of the testatrix did predecease her, so that when the testatrix died on March 13, 1931, a resident of the County of New York, the contemplated life estate never arose.

It must be taken as established that the convenient and expedient consummation of the testamentary purposes called for the creation of a single and coherent instrumentality of administration to prevent an unwarranted sacrifice of the intrinsic values of the extensive real estate holdings of the testatrix. Such was the common understanding promptly arrived at by the various eleemosynary institutions constituting the beneficiaries, and accordingly they caused to be introduced in the New York State Legislature an Act to incorporate Wendel Foundation, which became a law on May 16, 1935, with the approval of the Governor.

Its title is: "An Act to facilitate the management and liquidation of real properties given to certain charitable, benevolent, educational and religious corporations by Ella V. von E. Wendel and by Rebecca A. D. Wendel Swope, and for that purpose to incorporate Wendel Foundation."

The purposes are defined in § 2 as follows: "§ 2. The purposes and objects of the foundation shall be, and it shall have power, to receive, take, hold, own, manage, operate, lease, mortgage, improve, sell, assign, exchange, transfer, convey, and otherwise deal in all or any part of or any interest in the lands, tenements and hereditaments and other real property and appurtenances, and personal property used in connection therewith, at any time a part of the residuary estates of Ella V. von E. Wendel, who died March thirteen, nineteen hundred thirty-one, and whose last will and testament was admitted to probate in New York county on June twenty-ninth, nineteen hundred thirty-three, and of Rebecca A. D. Wendel Swope, who died on July twentieth, nineteen hundred thirty, and whose last will and testament was admitted to probate * * *, and to receive the rents, issues, profits and proceeds thereof, and from time to time to pay over the net income therefrom and the net proceeds of the sale of any part thereof, after reserving a reasonable and proper working fund

for the further operation of the foundation, to the several charitable, benevolent, educational and religious corporations, respectively, named as residuary beneficiaries in said last wills and testaments which shall have conveyed their several interests in said property to the foundation, hereinafter called the 'constituent corporations', as their respective interests shall from time to time appear, and finally to liquidate all of said property, by sale or otherwise, and distribute the same, or the proceeds thereof, and all income therefrom, to the then constituent corporations as such interests shall appear. The power and capacity of the foundation to take and hold property shall be without limitation as to the amount or value of the property or the income therefrom."

§ 3 provides that each constituent corporation shall choose one member of the foundation, and the members so chosen shall be individuals and constitute the successors of the persons named in section 1. Each member is entitled to cast one vote for each one-two hundredth share in the residuary estate of the decedent (that being the unit of participation in the residuary estate, as shown).

The other provisions of this section are not presently material.

§ 4 provides for the creation of a board of trustees and sundry administrative matters pertaining thereto.

§ 5 contains the following: "The foundation may purchase the pro rata share of any constituent corporation in the property of the foundation, upon the consent in each instance of such constituent corporation and of members of the foundation then entitled to cast nine-tenths of the total authorized vote. Upon the consent in each instance of the members of the foundation then entitled to cast nine-tenths of the total authorized vote, the foundation may purchase all or any part of the interest in the residuary estates of said Ella V. von E. Wendel and Rebecca A. D. Wendel Swope of any beneficiary not a constituent corporation. Upon the final consummation of any such purchase, the residuary beneficiary whose share or interest is so acquired shall not thereafter become a constituent corporation, or if it has been a constituent corporation, it shall cease to be a constituent corporation, and the office of its member and alternate member shall terminate, and its right to vote or otherwise participate in the affairs and assets

of the foundation shall cease. Thereafter the share or interest so purchased shall belong to the remaining constituent corporations as their interests shall from time to time appear."

§ 6 provides that no member, trustee, officer, agent or employee of the foundation shall receive any pecuniary benefit or profit from the operations of the foundation "except reasonable compensation for services in effecting one or more of the purposes of the foundation".

§ 7 provides, in part, that "the property and assets of the foundation are hereby declared to be held by it pursuant to a charitable trust, and the foundation shall possess all of the exemptions from taxation now or hereafter conferred by law upon a corporation" so organized; "provided, however, that the foundation and its real property shall not by reason of anything in this act contained enjoy any exemption from local or state real property taxes to which it or said real property would not be entitled if the foundation were organized under any general law of this state".

§ 8 gives the said residuary beneficiaries, without application to the court, the right to convey any property received under the said residuary clauses, to the foundation.

The remaining sections, five in number, have no present bearing.

It is stipulated that on August 8, 1934, "plaintiffs as such surviving executors delivered into the possession of said fourteen corporations as of June 29, 1934, all of the then unsold residuary real property affected by said Twenty-third paragraph of said will".

There was no evidence as to what actually took place as a basis for the foregoing.

On December 1, 1936, six deeds dated August 1, 1936, were executed by the plaintiffs, as said surviving executors, and by the said fourteen corporations, and delivered to the Wendel Foundation, and it is stipulated that those deeds "conveyed to said Wendel Foundation all the then unsold residuary real property of said Ella V. von E. Wendel, consisting of numerous parcels located in the Counties of New York, Kings, Suffolk and Westchester in the State of New York, of certain parcels located in the County of Hudson, State of New Jersey, and of a certain parcel located in the County of Douglas, State of Wisconsin".

Those are the deeds to which the documentary stamps were affixed, the first four describing, respectively, the properties in the Counties of New York, Suffolk, Kings and Westchester, in this state; the fifth, the property in New Jersey; and the sixth that in Wisconsin.

As to the New York deeds, the opening paragraph is, in part: "Witnesseth: That the parties of the first part (the executors, grantors) by virtue of the power and authority to them given in and by said last will and testament of Ella V. von E. Wendel, deceased, and pursuant to the unanimous request hereby made by the parties of the second part (the beneficiaries, grantors) and for the purpose of making a partial distribution in kind of the residuary estate under the said last will and testament; and that the parties of the second part (the beneficiaries, grantors), pursuant to the provisions of said Chapter 947 of the laws of 1935 of the State of New York, and in consideration of the sum of One hundred ($100.00) Dollars, lawful money of the United States, and other good and valuable considerations, paid by the party of the third part (the foundation, grantee) to the parties of the second part do all hereby grant and release", etc.

The deed to the New Jersey property is the same except as to the consideration, which reads: "and in consideration of the sum of One Hundred ($100) dollars, lawful money of the United States, and other good and valuable considerations to the parties of the second part well and truly paid by the party of the third part at or before the ensealing and delivery of these presents, the receipt whereof is hereby acknowledged, and the said parties of the second part being therewith fully satisfied, contented and paid, have given, granted", etc.

The deed to the Wisconsin property is again the same except as to the consideration, the language being: "and in consideration of the sum of One hundred ($100) dollars, lawful money of the United States, and other good and valuable considerations to the parties of the second part well and truly paid by the party of the third part at or before the ensealing and delivery of these presents, the receipt whereof being hereby confessed and acknowledged, and the said parties of the second part being therewith fully satisfied, contented and paid, have all given, granted, bargained, sold", etc.

The stamps having been affixed, a claim for refund was made, and rejected under date of October 8, 1937, for the following reasons:

(a) " * * * at meetings the members of the Foundation shall be entitled to cast one vote for each one-two hundredth (1/200th) shares in the residuary estate of" the testatrix.

(b) "The Foundation is empowered to purchase the pro rata share of any constituent corporation", upon the requisite consent.

(c) "It is shown that they (presumably the constituents) have all rights, privileges, and benefits attaching to a stockholder in any corporation."

From which it was concluded that "stamp tax liability was therefore incurred under Schedule A-3 and A-8, Title VIII of the Revenue Act of 1926, as amended".

It was testified for the plaintiffs at the trial, without contradiction, that in no case was there a payment of $100 as recited in each deed. That fact is therefore deemed to have been established.

The regulations relied upon by defendant are as follows:

Regulation 71, Article 79: "'Sold' defined—The term 'sold' imports the transfer of the absolute or general title for a valuable consideration or price."

Regulation 71, Article 87: "Conveyance of land in consideration of maintenance—Conveyance of land in consideration of maintenance is taxable, the tax to be measured by the value of the property or interest conveyed."

Regulation 71, Article 89: Stock is said to be a valuable consideration; manifestly this does not apply.

The same remark applies to Regulation 71, Article 109, dealing with a conveyance of real estate by co-owners in consideration of the issue of capital stock to them, and to Regulation 71, Article 114, which provides that a conveyance of real estate sold to the United States Government is subject to tax.

Since there was no cash consideration actually paid, although it was recited, the question seems to narrow itself down to whether the accomplishment of unified administration of the several residuary properties by the Foundation—which could not have been contrived except through the adoption of some such procedure as was

employed—is fairly within the taxable purpose of the law.

Obviously the deeds were not executed and delivered for the purpose of removing the several properties from the purview of the testamentary purposes, but rather to secure their ultimate fulfillment.

To avoid sacrificing those purposes to a relentless liquidation of extensive holdings in a reluctant market, the stewards chosen by Miss Wendel elected to function through an instrumentality which the Legislature of the State of New York was willing to bring into being to aid them to perform their high calling.

■ So understood, the Wendel Foundation was not a purchaser of these parcels of real estate within the contemplation of the quoted section of the Act.

■ The taxing purpose was to exact 50 cents for each $500 value of the property sold. The government excised so much from the seller who received cash or security for parting with his property.

The attitude of the Collector, as revealed in his communication of October 8, 1937, showed that he was hard put to give a reason for construing this to be a commercial transaction. The first reason has to do with the casting of a vote, but the basis of that is found in the residuary clause of the will and not in any commercial or money-making formula. The second is that the Foundation may purchase the pro rata share of any constituent corporation, but since the purpose of the Foundation is to promote the administration of the charitable purposes of the named testatrix, such right of purchase is incident to the fiduciary duties of the corporation. What is meant by the third reason is not understood; the rights, privileges and benefits attaching to stockholding are supposedly confined to sharing in profits arising from the business and commercial activities of a corporation.

The government briefs refer fourteen times to the fact that each constituent received "its proportionate share or interest in the new Foundation".

That is not a persuasive phrase. The residuary charities merely constituted themselves a non-stock body corporate, with express legislative sanction, the more completely to perform the duties of their stewardship.

The ultimate objects of testamentary benevolence are neither the constituents, nor the Foundation, but the community itself. To characterize an instrumentality to achieve Miss Wendel's purposes as a purchaser, or a formal step in the procedure of performance as a sale, within the obvious purpose of this taxing act, is to ignore plain realities.

The Regulations which give support to the views presently held are not those cited by the defendant, but the following:

Code of Federal Regulations, Title 26 (Page 908), Internal Revenue:

"111.110 *Deeds by Executor.* Deeds by an executor to devisees, conveying specific parcels of real estate, devised to them in common, are not subject to tax unless a consideration passes between the devisees by reason of some of them taking a greater share in the real estate than that to which entitled under the will, in which event tax attaches to the deeds conveying such greater shares, and is calculated upon the amount of value of such consideration."

"111.113 *Conveyances to trustee, or from trustee to cestui que trust, without consideration.* Conveyances to a trustee without valuable consideration or from a trustee to a cestui que trust without valuable consideration are not subject to tax."

■ The quoted sections of the Act creating the Wendel Foundation sufficiently characterize its status as trustee to justify recourse to the foregoing to gain a true understanding of the taxing purpose which underlies the cited section of the statute.

Since the transaction under examination was not such a sale of real estate, to a purchaser for a consideration, the stamps were not required, and judgment is granted to the plaintiffs according to the prayer of the complaint.

If more detailed findings than are stated are deemed requisite, they may be settled on notice.

Settle order.