To: Randy Miller Executive Director Department of Revenue
QUESTION:
Is sales tax due on the cost of copies of public records furnished by public officers or public employees under the provisions of s.119.07(1), F.S.?
SUMMARY:
Unless and until judicially determined otherwise, the sales tax imposed pursuant to s. 212.05, F.S., is not applicable to fees charged for providing copies of public records under s. 119.07, F.S.
Florida's Public Records Law, ch. 119, F.S., requires that all public records made or received pursuant to law or ordinance or in connection with the transaction of official business by any public agency or any public or private agency acting on behalf of a public agency must at all times be open for personal inspection by any person. See s. 119.01, F.S., and s. 119.07(1), F.S. Section119.07(1)(a), provides:
 Every person who has custody of a public record shall permit the record to be inspected and examined by any person desiring to do so, at any reasonable time, under reasonable conditions, and under supervision by the custodian of the public record or his designee. The custodian shall furnish a copy or a certified copy of the record upon payment of the fee prescribed by law or, if a fee is not prescribed by law, upon payment of the actual cost of duplication of the record. The phrase "actual cost of duplication" means the cost of the material and supplies used to duplicate the record, but it does not include the labor cost or overhead cost associated with such duplication. However, the charge for copies of county maps or aerial photographs supplied by county constitutional officers may also include a reasonable charge for the labor and overhead associated with its duplication. Unless otherwise provided by law, the fees to be charged for duplication of public records shall be collected, deposited and accounted for in the manner prescribed for other operating funds of the agency. (Emphasis supplied.)
Thus, a custodian of a public record is under a legal obligation to provide a copy of a public record upon payment of a fee prescribed or, if no fee is prescribed, upon payment of the actual cost of duplication of the record. The question is whether this transaction is subject to the state's sales tax.
Section 212.05, F.S., as amended by chs. 86-152, 86-155 and 86-166, Laws of Florida, in relevant part, provides:
 Sales, storage, use tax. — It is hereby declared to be the legislative intent that every person is exercising a taxable privilege who engages in the business of selling tangible personal property at retail in this state, or who rents or furnishes any of the things or services taxable under this chapter, or who stores for use or consumption in this state any item or article of tangible personal property as defined herein and who leases or rents such property within the state.
The word "person" is defined by s. 212.02(1), F.S., to include "any political subdivision, municipality, state agency, bureau, or department and the plural as well as the singular number." The fact that the entity involved is a public agency would not therefore preclude the imposition of the sales tax. Thus, the crux of the question is whether a public agency in furnishing a copy of a public record and receiving the statutorily prescribed fee or actual cost of duplication as required by law is "engag[ing] in the business of selling tangible personal property at retail in this state," or "rent[ing] or furnish[ing] any of the things or services taxable under this chapter." Section 212.05, F.S., as amended.
This office, in AGO 75-278, has previously stated that the sales tax imposed under ch. 212, F.S., "is not a tax against persons or property, but is an excise tax levied upon business transactions for the privilege of engaging in a particular occupation or business, although it is computed upon the sales prices of the commodity or upon the price charged for the services rendered." Cf. Ryder Truck Rental, Inc. v. Bryant, 170 So.2d 822 (Fla. 1964) ("sale" or "use tax" is tax on privilege of engaging in particular business or occupation). And see 84 C.J.S. Taxation s. 122, stating that "the legislature has the right and discretion to determine the subjects or objects on which excise taxes shall be laid, and it may tax such acts, privileges, and occupations, as it sees fit. . . ." Section 212.02(9), F.S., as amended by s. 1, ch. 86-166, Laws of Florida, in pertinent part, defines "business" to mean "any activity engaged in by any person, or caused to be engaged in by him, with the object of private or public gain, benefit, or advantage, either direct or indirect . . . [;] the term `business' shall not be construed in this chapter to include occasional or isolated sales or transactions involving tangible personal property by a person who does not hold himself out as engaged in business. . . ." Cf. Richard Bertram Company v. Green,132 So.2d 24 (3 D.C.A.Fla., 1961); Green v. Pederson, 99 So.2d 292
(Fla. 1957), regarding occasional or isolated sales. And see s.212.02(12), F.S., defining "tangible personal property" to mean and include "personal property which may be seen, weighed, measured, or touched or is in any manner perceptible to the senses. . . ."
While it is clear that a copy of a public record is "tangible personal property," it does not appear that a public agency in providing a copy of a public record as required by statute is engaging in an activity with the object of private or public gain, benefit, or advantage. This office has stated that a number of activities undertaken by public entities come within the taxation provisions of ch. 212, F.S. See, e.g., AGO's 75-267 (City of Jacksonville Department of Housing and Urban Renewal Development is liable for sales taxes due on rentals received from the leasing of commercial property acquired through urban renewal and leased temporarily until disposed of); 75-278 (transient rentals tax applicable to dockage charges imposed by the Port of Palm Beach District); 80-47 (for the purposes of ch. 212, F.S., generally, statutorily created health facility authority is a "person" operating a business which engages in a taxable privilege under s.212.031, F.S., when it rents real property in the state). In all these situations it would appear that the rentals and charges were made with the object of some gain, benefit or advantage inuring to the public agency.
However, I am of the opinion that a public agency in furnishing a copy of a public record upon payment of the fee prescribed by law or, if no fee is prescribed, upon payment of the actual costs of duplication is not engaging in the business of selling tangible personal property at retail, and therefore no sales tax is due on the cost of copies of public records furnished under the provisions of s. 119.07(1), F.S. It does not appear that the legislative intent, in requiring custodians of public records to furnish copies upon payment of statutorily set fees or if none, upon payment of actual cost, is to establish a type of business with the object of private or public gain, benefit, or advantage. In fact, the legislative use of the phrase, "actual cost of duplication" expressly precludes any gain, benefit, or advantage from inuring to the agency supplying the public record in question. Furthermore, it is a fundamental rule of statutory construction that tax laws are to be construed strongly in favor of taxpayers and against the government, and that all ambiguity or doubts are to be resolved in favor of the taxpayers. See Maas Brothers, Inc. v. Dickinson, 195 So.2d 193 (Fla. 1967); Culbreath v. Reid, 65 So.2d 556 (Fla. 1953).
Nor does it appear that providing a copy of a public record constitutes a taxable service under the provisions of ch. 212, F.S., as amended. Section 119.07(1)(a), F.S., makes it clear that the phrase "actual cost of duplication" does not include "the labor cost or overhead cost associated with such duplication." Section 119.07(1)(b), F.S., further authorizes a "special service charge" that may be imposed if the nature of volume of public records requested is such as to require extensive use of information technology resources or extensive clerical or supervisory assistance by agency personnel. However, the statute goes on to require that the charge "be based on the cost incurred for such extensive use of information technology resources or the labor cost of the personnel providing the service that is actually incurred by the agency or attributable to the agency for the clerical and supervisory assistance required, or both."
The analysis applied above as to the "actual cost of duplication" is equally applicable to such special service charge. It is clear that the Legislature contemplated that the charge is imposed for purposes of only off-setting that actual cost of providing such extensive resources or extensive clerical or supervisory assistance, not for purposes of securing an agency business gain within the contemplation of ch. 212, F.S., as amended. I therefore cannot conclude that the Legislature intended that the "special service charge" authorized by subsection (1)(b) of the statute be imposed for purposes of securing any business gain, benefit or advantage for the public agency but rather the Legislature merely intended for the public agency to cover the costs involved in furnishing copies of public records when the nature or volume of the records requires extensive use of information technology resources or extensive clerical or supervisory assistance by agency personnel.
Sincerely,
Jim Smith Attorney General
Prepared by:
Craig Willis Assistant Attorney General